## PANHANDLE & S. F. RY. CO. et al. v. GRIFFITH. (No. 1718.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 8, 1920. Rehearing Denied Jan. 5, 1921.)

1. Carriers ⊜228(5)—Finding of negligence in failing to bed car and to drench hogs with water sustained.

In an action against a carrier for damages to a shipment of hogs, evidence *held* sufficient to warrant a finding of negligence in failure to properly bed the car and to drench the hogs with water, whereby some of the hogs died as against a contention that the cause of the death was cholera.

2. Carriers ⊜230(9) — Submission of negligence in failing to water shipment of hogs held error.

In a shipper's action against a carrier for damages to a shipment of hogs, submission of negligence on the carrier's part in failing to water the hogs *held* erroneous in view of the shipping contract which required the caretaker to look after that matter.

Appeal from Floyd County Court; J. W. Howard, Judge.

Action by Watt Griffith against the Panhandle & Santa Fé Railway Company and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellants.

C. A. Wright, of Ft. Worth, for appellee.

BOYCE, J. Appellee, as plaintiff, brought this suit against the appellants, Panhandle & Santa Fé Railway Company and the Texas & Pacific Railway Company, to recover damages to a carload of hogs shipped by plaintiff, from Lockney, Tex., to Ft. Worth, Tex. The negligence alleged was the failure to have the car, which was furnished for the shipment, properly bedded, the failure to drench the hogs with water and water them internally during the transportation, and an unreasonable delay in the transportation thereof. Plaintiff on trial recovered judgment for $350, apportioned between the defendants.

The shipment was loaded at Lockney, at 7 a. m. May 20, 1916, and was unloaded at Ft. Worth at 9:40 p. m. on May 21st, being on the road an unusually long time for this character of shipment between such points. There was a delay of 4½ hours at Plainview, on the line of the Panhandle & Santa Fé

Railway Company, about 4 hours at Baird, on the Texas & Pacific Railway Company, and the hogs reached Ft. Worth at 5:30, but were not unloaded until about 9:40. The jury would have been warranted in finding that a part of each of these delays was the result of negligence. The hogs were drenched with water at Slaton and Baird. Plaintiff's caretaker requested that the hogs be watered when the shipment reached Baird, but this was not done until just before the shipment left, at which time the hogs were very hot. The watering was done by running water over the hogs from the top of the car, and there was evidence that this was likely to kill hogs when they were hot. None of the hogs were dead at Baird, but from that time on they began to die, and when they were unloaded there were ten head dead and several crippled. It was shown that a bedding of sand would retain moisture and keep the hogs cool for some time after a watering, while an unbedded car would quickly dry and lose the effect of the watering. A veterinarian examined three of the dead hogs, which were said to have been taken out of this car, and testifies that he found conditions characteristic of cholera, and which he diagnosed as cholera.

[1] Most of the assignments are based on the contention that there was no evidence of negligence on the part of either of the defendants, which was the proximate cause of the death of the hogs, and that it conclusively appears that they died of cholera. We overrule these assignments. The evidence does not conclusively identify the hogs examined by the veterinarian with the hogs taken out of this car, and, if it did, it does not conclusively follow that the jury were bound to accept his opinion. Besides, only three head of the hogs were examined by him. The jury would have been warranted in finding negligence in the failure to bed the car, in the manner and time of drenching the hogs with water, and in the unusual delays, and these acts of negligence, combined, were sufficient to account for the condition of the hogs on their arrival.

[2] We sustain the four assignment, which complains that there was error in the court's charge in that he submitted, as one of the grounds of recovery, a question of negligence on the part of the defendants in failing to water, or afford the caretaker the means of watering, the hogs internally. The shipping contracts provided that the shipper or caretaker should attend to, feed, and water the hogs while in course of transportation, and that the carrier would stop its cars for watering only at stations where it had facilities for such purposes, on the written request of such shipper or caretaker. The plaintiff had a caretaker in charge of the hogs, and there is no evidence that he requested that the hogs be given water to drink or that he asked for an opportunity to give the hogs drinking water. The cars were not provided with drinking troughs, and it is evident that the hogs would have had to be unloaded in order to be given water to drink, except such water as they might get as it was flushed over and under them in the car. It is also evident that it was not contemplated by the shipper or carrier that the hogs were to be unloaded or watered en route in any other way except by drenching. This request on the part of the shipper that the hogs be watered had reference to the drenching of the hogs with water while in the car. If the hogs needed water in any other way, it was the duty of the caretaker, under the provisions of the contract, to request that the hogs be furnished with drinking water. There was evidence that injury would result from the hogs going so long a time without water to drink, so that the verdict of the jury may have been based in part on a finding of liability on this issue, which we hold, under the circumstances, should not have been submitted.

For this reason the judgment will be reversed, and the cause remanded.